Hon. C. VOORHIES,
Hon. A. M. BUCHANAN, } *Associate Justices.*
Hon. A. N. OGDEN,
Hon. H. M. SPOFFORD,

---

### BLOCK *v.* BANNERMAN et al.

The Act of 15th March, 1847, which declares, that no citizen of another State shall hereafter be arrested in this State, at the suit of a resident or non-resident creditor, except in cases where it shall be made to appear, by the oath of the creditor, that the debtor has absconded from his residence, applies to the citizens of this Union only—not to the citizens of foreign States or countries. *Canal and Banking Co.* v. *Schroeder & Co.*, 7 Ann. 615.

An arrest will lie for damages for any injury sustained by the plaintiff, either in his person or property. *Wilder* v. *Bush*, 7 Ann. 657.

The contract of a passenger with the master is not for mere ship room and personal existence on board, but for reasonable food, comforts, necessaries, and kindness.

The owner of a vessel is liable for the tortious acts of the master committed whilst in his service and within the scope of his authority.

A captain is a *quasi* magistrate, on board his ship at sea, and may, within certain limits enforce and justify orders which the master in port would expose him to censure, to civil responsibility and to punishment. *Slidell*, C. J.

*Slidell*, C. J., and *Spofford*, J., dissented from the majority of the Court on a question of fact.

THIS case was tried by a jury before *Reynolds*, Judge of the Fourth District Court of New Orleans. *Roselius* and *Gaither*, for plaintiff. *Durant & Horner*, for defendants.

VOORHIES, J. This is an action to recover damages, alleged to have been sustained by the plaintiff in consequence of the tortious acts of the defendant, *Bannerman*, as master of the ship Imperial, on board of which the plaintiff embarked at Liverpool as a cabin passenger for Mobile, on the 16th October, 1854.

The plaintiff alleges in his petition, that during the voyage, *Bannerman* wantonly and unlawfully broke open his portmanteau and his other baggage,

whereby they became wholly lost to him; that he allowed the plaintiff's person to be stripped of his ordinary apparel and clothing, and during the voyage repeatedly allowed the plaintiff to be outrageously assaulted, maltreated and insulted by persons on board of said vessel; that these robberies and assaults were committed with the connivance and by the authority of *Bannerman;* that *Bannerman*, without any justifiable cause, unlawfully and maliciously committed a brutal assault and battery upon him; that the goods and clothing thus taken away from him, were worth $300; and that, from the other causes, he has sustained damages to the extent of $2,500. He further alleges that the other defendant, *James Read*, is part owner of the Imperial, and for the aforesaid causes is indebted to him *in solido* with *Bannerman*, in the said sum of $2,800; and that the defendants are about to leave the State permanently, without leaving in it property sufficient to satisfy his demand. Wherefore he prayed for a writ of arrest, and that judgment be rendered in his favor against both of the defendants *in solido* for the sum claimed in his petition.

In the affidavit accompanying the petition, it is sworn by the plaintiff, that the debt and damages claimed in his petition are really due him; "and that he verily believes that the said defendants are about to depart from the State permanently, without leaving in it sufficient property to satisfy his demand."

The arrest was accordingly granted and the defendants held to bail.

A rule was taken by the defendants, at an early stage of the proceedings, to set aside the arrest on the following grounds, viz:

1st. Because no writ of arrest is allowed in such a case.

2d. That the affidavit was insufficient, as it was not made to appear that the defendants had absconded from the place of their residences.

3d. That it was not true in stating that defendants were about to depart permanently.

4th. Because plaintiff could not swear positively to the amount of damages.

5th. That the defendants not being citizens or residents of Louisiana, cannot be arrested under the affidavit made in this case, they being residents of Scotland and citizens of Great Britain.

6th. That the damages laid are excessive.

The District Court considered these grounds insufficient and discharged the rule.

The case was then submitted to a jury who found a verdict in favor of the plaintiff; and from the judgment thereon rendered the defendants have appealed.

The first questions presented for consideration relate to the sufficiency of the affidavit on which the arrest was founded. The two principal grounds upon which the appellants relied to maintain the rule, were, first, that the affidavit was informal in this particular, that it did not appear by the oath of the affiant that the defendants had absconded from their residences; and secondly, that the defendants were exempted from being arrested, under the laws of Louisiana, upon a demand arising *ex delicto*. We consider the principles involved in both of these questions as having already been settled in the cases of the *Canal Bank* v. *Scroeder*, 7 Ann. 615, and *Wilder* v. *Bush*, 7 Ann. 657. See C. P. 214. The other grounds urged, involving the merits, were equally untenable.

The record shows that *Block's* demeanor toward the passengers, the captain and his crew, was uniformly courteous and polite during the entire voyage.

That about three weeks after the vessel had sailed captain *Bannerman* broke open his trunk in presence of the passengers, repeatedly called him a confounded thief, assaulted and kicked him out of the cabin, and compelled him to remain in the steerage during the remainder of the voyage. Some of the German passengers stripped him of all his wearing apparel, except his shirt, in presence of the cabin passengers and of the officers of the vessel, and also took away from him all his other effects; so that, during the remainder of the voyage, he was compelled to wear, without ever changing, a course suit of clothes, which he procured on board. One of the witnesses deposed that he was as badly treated by the sailors as he had been by the captain; that they drenched him with water one evening whilst asleep on deck, disturbing no one nor violating any order of the ship; and, upon starting up from his sleep and running, they continued to pursue him and drench him with the hose and only ceased after he had descended the gangway leading to the cabin; that this was done either by the order of the captain or of his mate. There is no proof in the record of any just or legal cause to justify the conduct of the captain. It is, however, the opinion of some of the members of this court, that the record discloses circumstances relating to the conduct of *Block*, which are entitled to our favorable consideration in mitigation of damages. After the most careful examination, I regret that I have been enable to concur with them in this view. It has been held "that the contract of a passenger with the master is not for mere ship room and personal existence on board, but for reasonable food, comforts, necessaries, and kindness." 3 Mason 242. The violation of such a contract by the master necessarily implies his liability to respond in damages commensurate not only to the extent of the actual loss sustained, but to the excessive bodily suffering and mental anguish to which he has exposed the passenger. The rules which must be adopted as our guide in the assessment of damages in cases of this kind, are to be found in Article 1927 et seq. of the Civil Code, and also in the numerous decisions of this court on that subject. Considering all the circumstances of the case, I do not think that the jury exceeded the discretion reposed in them by law in the assessment of the damages; consequently I should have desired that their verdict should not be disturbed. But the opinion of two of the members of the court is, that the damages are excessive and should be reduced to the sum of one thousand dollars and to this I have reluctantly assented.

The principle of law that the owner of a vessel is liable for the tortious acts of the master committed whilst in his service and within the scope of the employment of the latter, may be considered as well settled, and no longer an open question. See 4 L. R. 243. 5 ibid 433. 6 ibid 319. 1 ibid 537. 7 Ann. 337. 1 Dallas 184.

It is therefore ordered and decreed, that the judgment of the District Court be avoided and reversed, and that the plaintiff recover of the defendants *in solido* said sum of one thousand dollars with legal interest from judicial demand, and costs of the inferior court, the costs of appeal to be paid by the plaintiff and appellee.

BUCHANAN, J. and OGDEN, J., concurring in this opinion.

SLIDELL, C. J., dissenting. The damages claimed in the petition are laid at three hundred dollars for the plaintiffs' clothing and other goods, and twenty-five hundred dollars for the assault upon his person. These damages have

BLOCK<br><i>v.</i><br>BANNERMAN.

been allowed in full, they are certainly high. I would not, however, be dis-posed to disturb them, (except, perhaps, as to the value of the clothing and goods,) if there was no fault on the part of the plaintiff. But I have not been able to bring my mind to that conviction; and as I am dissenting from the verdict of a jury on a question of fact, it is proper I should state my reasons. In doing so, let me observe in the outset that of twenty witnesses on whose evidence the cause was tried, six only (two for defendant and four for plaintiff,) were seen and heard face to face by the jury, the residue having been examined under commission. I may therefore with regard to the principal portion of the evidence consider myself as having as good an opportunity of estimating its weight as the jury had.

It appears from the evidence, that the ship Imperial, commanded by Bannerman, left the port of Liverpool with five hundred and seventeen steerage passengers, besides six in the cabin. There was a physician on board to attend to the emigrants, a large portion of whom were Germans; and it was agreed that the plaintiff Block, should have a cabin passage free of charge, in consideration of services to be performed by him in interpreting between the doctor and the passengers, Block speaking both German and English. The mate of the vessel deposes that Block had volunteered to go with him when he served out provisions to the passengers, and was in the habit of calling up those who could not speak English, to receive their provisions. That about a fortnight after leaving Liverpool, Block proposed selling the provisions to the passengers, he to receive the money and give the witness half. This conversation he reported to the captain. Subsequently one day when the captain was standing on deck, conversing with a cabin passenger named Woodworth, three German steerage passengers came aft to speak to the captain. Woodworth who had resided in Hamburgh and was familiar with German, deposes that these passengers complained to the captain " of Block having received money from them for salt provisions, which had been placed on board by their agent, and which therefore belonged to them; whereupon the captain called Block to him and asked him the reason for so doing. He answered that if he received money from the German passengers for his interpreting, that it was nothing to him. Block also acknowledged having received money, at the same time stating that if it had been a much larger sum he would return no part of it. The captain then ordered Block to open his trunk, and Block refusing to do so, the captain sent for the carpenter to open it; to the witnesses' knowledge he did not take any thing out of it. Defendant did not see the trunk again until some time afterwards he saw Block taking it out of the cabin, at the same time Block remarked to the captain that he was going to give the portmanteau to the passengers, but would hold him, the captain, responsible for it. Heard the captain give the order to Block to go out of the cabin. Block refused to comply with the request."

Murphy, the mate, also swears that the passengers complained to the captain as stated by Woodworth, and that the captain opened his trunk to search for the money to return it to the passengers.

Gregory, an other cabin passenger, also testifies to the fact of the complaint to the captain by the passengers, and its truth is corroborated by two other witnesses for the defendants and by the testimony of three of plaintiff's own witnesses. And Crawford, the ship's carpenter, also testifies that he heard

*Block* acknowledge he had received money from the steerage passengers for the provisions.

There is therefore irresistible evidence that the steerage passengers complained to the captain of *Block's* having committed a fraud upon them ; and there is also evidence which, with the aid of the corroborating evidence of the complaint adduced to the captain, satisfies my mind that *Block* had taken advantage of his position as interpreter to get money wrongfully out of the steerage passengers.

Now this conduct, in my opinion, justified the captain in ordering him out of the cabin.   His cabin passage was promised in consideration of services to be by him performed, whereby the health and comfort of ignorant and necessitous emigrants was to be promoted.   *Block's* conduct was the very opposite of his duty, violated his contract, and justified the captain in refusing to let him remain in the cabin.

But if the above conclusion be well founded, it surely goes very materially in reduction of damages.   It shows that *Block* had turned his employment to an unworthy and dishonest purpose, and suggests a good motive for the opening of the trunk, a desire to do justice on the spot, to the poor and ignorant people whom *Block* had deceived.   Let it be remembered that a captain is a quasi-magistrate on board his ship at sea, and may within certain limits enforce and justify orders which in port would expose him to censure, to civil responsibility, and to punishment.   See Abbott, edition of 1850.   Boulay Paty, Tit. iv. 3 Kent. 184.   8 Carrington & Payne, 454.   Emerigon (Meredith) p. 153.

I by no means suggest however, an entire refusal of damages, although there is a conflict of evidence respecting the circumstances of the assault by the captain and his knowledge of the indignity practiced by the crew, my conclusion from the evidence is unfavorable to the captain on these points.   I am not satisfied that a resort to force was necessary to exclude *Block* from the cabin, nor that the captain enforced proper discipline for the protection of his person and effects.   That protection he clearly did not forfeit by the unworthy conduct by which he forfeited his right to remain a cabin passenger.

I am unwilling to affirm the verdict for the whole amount, and think on the contrary that the damages allowed by the jury should be materially reduced, and that below the amount allowed by the majority of the court.

SPOFFORD, J.   I concur in this opinion.