## Case No. 10,922.

### PENDLETON v. KINSLEY.

[3 Cliff. 416.] [1]

Circuit Court, D. Rhode Island. June Term, 1871.

CARRIERS OF PASSENGERS — LIABILITY FOR VIOLENCE OF EMPLOYEES—ACTS BEYOND AUTHORITY.

1. While collecting the fares, the clerk of a steamer owned by the defendant, inflicted personal injuries upon the plaintiff, on board the vessel during one of her regular trips. Held, the

1 [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

plaintiff could recover of the defendant for the injuries received, although the defendant did not authorize the acts of his employee.

[Cited in brief in Spohn v. Missouri Pac. Ry. Co., 87 Mo. 76.]

[See note to Texas & P. Ry. Co. v. Williams, 10 C. C. A. 466, 62 Fed. 440.]

2. The principles of law applicable to the relations of master and servant, do not fully define the rights, duties, and obligations between carriers of passengers, and passengers; they are not merely citizens bearing only toward each other the relations which one citizen bears to another: the carrier had agreed to carry for hire the passenger from one place to another, and was responsible for any breach of the obligation he had assumed, that the passenger should not be ill used by himself or his employees.

[Cited in Washington & G. R. Co. v. Varnell, 98 U. S. 480; The City of Panama v. Phelps, 101 U. S. 463.]

[Cited in Littlejohn v. Fitchburg R. Co., 148 Mass. 481, 20 N. E. 103.]

3. A dispute had arisen between the clerk and the passenger as to the latter's fare, but the question whether the defendant was liable for the injuries inflicted by his clerk upon the plaintiff was decided irrespective of that dispute, and as if none such had arisen.

4. Passengers do not only contract for room and transportation, but for good treatment, and it is the duty of the owners to use due care and exertion to protect them from any degree of violence, or kind of abuse or ill-treatment from other passengers, or the owners' servants or other persons coming on board during the trip.

5. The principal in this class of cases is liable for the misconduct of the employee, when it occasions injury to the passenger, whether arising from malice or neglect.

[Cited in Gallena v. Hot Springs R. R., 13 Fed. 123.]

Case against the defendant [Rufus B. Kinsley] to recover damages for injuries resulting to the plaintiff [Dewit C. Pendleton] from an assault and battery alleged to have been inflicted upon him by one Charles L. Stanhope. Personal injuries were inflicted on the plaintiff by Charles L. Stanhope, clerk of the steamboat Perry, employed at the time and for many years before in carrying passengers and freight between Newport and Providence, in this district, and he brought action against the defendant, as the owner of the steamer, to recover compensation for the injuries so inflicted while he was a passenger on board the steamer. Service having been made upon the defendant, he appeared and pleaded the general issue, and upon that issue the parties went to trial, and the jury, under the instructions of the court, returned a verdict for the defendant, subject to the opinion of the court upon questions of law reserved by the court for further consideration. Evidence was introduced by the plaintiff sufficient to warrant the jury in finding that the defendant was owner of the steamer for the voyage, as it appeared that the record title of the steamer was in his name, that the clerk was in the employment of the defendant, and that the steamer was not under charter to any other person.

Business made it necessary for the plaintiff to go to Providence on the 29th of August, 1862, and, being at Newport at the time, he went on board of the steamer for that purpose before she started from Newport on her morning trip to the former place. He had often passed over that route in that steamer before, and, having been accustomed to purchase tickets for the trip, of the clerk of the steamer, he applied to him for one on this occasion, within a short time after he went on board, and offered him a one-dollar bill on one of the national banks of the state to pay for the ticket. The price of tickets was fifty cents, and the witness states that he had frequently offered bills for tickets before that time, and seen others do the same thing, and that the clerk always received the bills and made change without any objections. On this occasion, however, he refused to take the bill, or give him a ticket, saying that he had no change, to which the plaintiff replied, "If you have no change, give me postage-stamps," but the clerk replied to that suggestion that he had no postage-stamps, and suggested that the plaintiff would have to take two tickets, to which the plaintiff replied that he did not want two tickets, adding that he was not accustomed to purchase tickets in advance. Whereupon the plaintiff left the main deck, where the office of the clerk was, and went to the saloon deck above, where there were many gentlemen and ladies and children sitting on the settees facing the stern of the steamer. Nothing further of importance occurred till after the steamer passed Portsmouth Grove, when the express-agent came around to collect the tickets from the passengers, as he sometimes did, in the place of the clerk who had charge of that business. He went to the plaintiff and asked for his ticket, but the plaintiff told him that he had none; that he offered to pay for one when he first came on board, and that the offer which he made was refused, to which the express-agent replied, "You will have it to pay," and passed along. In a few minutes the clerk and the express-agent came up together, and the clerk demanded pay for his fare of the plaintiff, but the plaintiff replied substantially as before. that he had once offered to pay for a ticket, and that he, the clerk, had refused to accept the pay for the same. Here the conversation ended, but the clerk seized the plaintiff by the collar and pulled him violently from the settee where he was sitting, pushed him from there to the companion-way, and shoved him down those steps to the main deck, near where he was when he offered to purchase and pay for a ticket, and from there he pushed him to the companion-way leading to the lower deck, and shoved him down that passageway also to the lower cabin, and set him down violently on the seat near the berths, and left him without any explanation. Left alone he remained there for a short time, and then went to the saloon deck, where he was when he was assaulted, and on the arrival of the steamer at Providence he left unmolested.

and on the following day returned to his own residence.

Evidence was introduced by the plaintiff tending to show that he was seriously injured in his back and other parts of his body, and that the injuries were of a permanent character. Much testimony was introduced as to the extent of his injuries, but it is unnecessary to refer to it in this report, as the defendant at the close of the plaintiff's case moved the court to instruct the jury that in view of the whole evidence the plaintiff could not recover, and that their verdict should be for the defendant; and the court gave that instruction as requested. After the verdict a motion for new trial was duly filed by the plaintiff, and the parties were heard upon the question whether the defendant in any view of the evidence was liable for the assault committed on the plaintiff by the clerk of the steamer.

J. M. Blake and F. W. Miner, for plaintiff. W. P. Sheffield, for defendant.

CLIFFORD, Circuit Justice. Owners of vessels engaged in carrying passengers assume obligations somewhat different from those whose vessels are employed as common carriers of merchandise. Obligations of the kind in the former case are in some respects less extensive and more qualified than in the latter, as the owners of the vessel carrying passengers are not insurers of the lives of their passengers, nor even of their safety, but in most other respects the obligations assumed are equally comprehensive and stringent. Carriers of passengers by land, it was said in one of the early cases, are not liable for injuries happening to passengers from unforeseen accident or misfortune, where there has been no negligence or default; but it was held in the same case that the smallest negligence would render the carrier liable, and that the question of negligence was for the jury. Aston v. Heaven, 2 Esp. 533. Where the injury for which the action was brought resulted from the breaking of the axle of the coach, the court held, in the case of Christie v. Griggs, 2 Camp. 79, that "when the breaking down or overturning of a coach is proved, negligence on the part of the owner is implied," subject, of course, to opposing testimony; that the question of negligence was for the jury; that if it appeared that the axle-tree was sound, "as far as the human eye could discover," the defendant was not liable; that there was a difference between a contract to carry goods and a contract to carry passengers; that the carrier of goods was liable at all events; that the carrier of passengers did not warrant their safety; that his undertaking went no further than that he would provide for their safe conveyance as far as human care and foresight could go; that the owner was liable if there was the least negligence; but that the plaintiff had no remedy for the misfortune if the breaking down of the coach was purely accidental. Attempts have been made to show that the rule laid down in the case of Sharp v. Grey, 9 Bing. 457, is more stringent against the owner, but the question submitted to the jury in that case was whether the degree of vigilance practiced by the defendant was such as was required by his engagement, and two at least of the judges concurred in refusing the motion for the new trial upon the ground that the question was one of fact for the jury. The remarks of the chief justice in the case of Crofts v. Waterhouse, 3 Bing. 319, are sometimes referred to as advancing a more stringent rule, but the opinion taken as a whole furnishes no support to the suggestion, and his associate on the occasion stated in terms that a carrier of passengers is only liable for negligence. Proprietors of stage-coaches, it is held in the case of Ingalls v. Bills, 9 Metc. (Mass.) 1, are not answerable for an injury to a passenger which happens by reason of a hidden defect in an iron axle-tree, which defect, being entirely surrounded by sound iron one fourth of an inch thick, could not be discovered by the most careful external examination. Carriers of passengers, by railways or steamers, are bound to greater precautions, and to a higher degree of care, skill, and vigilance in the preparation and management of the vehicles or means of conveyance than are required of the owners of stage-coaches, because the car of the railway proprietor and the steamer of the carrier by water are intended to sustain far greater weight, and are to be propelled by much greater power and at much greater speed. Simmons v. Steamboat Co., 97 Mass. 367.

Passengers must take the risk incident to the mode of travel which they select, but those risks, in the legal sense, are only such as the utmost care, skill, and caution of the carrier in the preparation and management of the means of conveyance are unable to avert. Hegeman v. Western R. Corp., 13 N. Y. 24. Damages were claimed by the plaintiff in that case for injuries received by the breaking of the axle of a railway car in which he was riding, and the defense was that the car was a new one, recently purchased of a manufacturer of skill and good repute, and that it was carefully examined at the time of the purchase; that the track was in good condition; that the speed of the train was not excessive; and that the employees were sufficient in number and of sufficient experience and skill, and that they were guilty of no negligence: but the court instructed the jury that it made no difference whether the car was constructed by the company or purchased of an experienced manufacturer, as the defendants were liable in either event if the defect could have been discovered in the process of manufacturing the axle or car by the application of any test known to men skilled in that business, and the court of appeals affirmed the judgment. They

held that the carrier of passengers was bound to the utmost precaution, care, and skill in the preparation and management of the means of conveyance; but they conceded that the carriers of passengers were not insurers, and that latent defects might exist in machinery, undiscoverable by the most improved and vigilant examination, and from which the most serious accidents may occur.

Expressions are found in the opinion of the court in the case of Boyce v. Anderson, 2 Pet. [27 U. S.] 150, which leave it to be inferred that the court was of the opinion that the carriers of passengers were only required to exercise ordinary skill and care to secure their safety; but the correct rule is stated in the case of Stokes v. Saltonstall, 13 Pet. [38 U. S.] 199, where the same court held that proof of the accident and alleged injury afforded a prima facie presumption that there was carelessness, negligence, or want of skill on the part of the driver; that it being admitted that the carriage was upset, and that the plaintiff was injured, it was incumbent on the defendant to prove that the driver was a person of competent skill, of good habits, and in every respect qualified and suitably prepared for the business in which he was engaged, and that he acted on the occasion with reasonable skill, and with the utmost prudence and caution, and if the disaster in question was occasioned by the least negligence or want of skill or prudence on his part, then the defendant, as the owner of the coach, was liable in that action. Hall v. Connecticut River Steamboat Co., 13 Conn. 326; Briggs v. Taylor, 28 Vt. 180; Redf. R. R. 175; Galena & C. U. R. Co. v. Yarwood, 17 Ill. 509. Negligence in the smallest degree renders the carrier liable, and there is one case in which it was held that a railroad corporation was liable for injuries to a passenger caused by a defect in an iron axle of a car, although it was of such a character that it could not have been discovered by any practicable mode of examination; but the rule there laid down is expressly disapproved in a recent judgment of the exchequer chamber, and cannot be adopted in this circuit until it is approved by the supreme court. Alden v. N. Y. Cent. R. Co., 26 N. Y. 102; Readhead v. Midland Ry. Co., L. R. 2 Q. B. 412; s. c., L. R. 4 Q. B. 379; Simmons v. New Bedford. V. & N. Steamboat Co., 97 Mass. 368. Such carriers are not insurers against accidents, nor are they required to do what is impossible in the nature of things. 1 Smith. Lead. Cas. (5th Ed.) 328. Undoubtedly they are bound to the highest degree of care, prudence, and caution; but if the injury results from a hidden defect in the car, engine, or other apparatus, unknown at the time, and which could not be detected by any known means, they are not responsible. because the obligation which they assumed did not require what it was not in their power to perform. McElroy v. Nashua & L. R. Corp., 4 Cush. 400; Story, Bailm. 581. Whether the owners of a vessel engaged in carrying passengers by water are or are not insurers, as to the seaworthiness of the vessel, it is not necessary to inquire, as no complaint is made in this case that the steamer was not in a seaworthy condition. 3 Kent, Comm. (11th Ed.) 205; Lyon v. Mells, 5 East, 428; Putnam v. Wood, 3 Mass. 481; Silva v. Low, 1 Johns. Cas. 184; The William Henry, 4 La. 223. Passengers, however, contract with the proprietors or owners of the conveyance, and not with their agents as principals, and the question of the liability of the proprietor or owner is wholly unaffected by the fact that the defective car, engine, or other apparatus was purchased of another if the defect was one which might have been discovered by any known means. Whether their engine or car was manufactured at their shop or was purchased of other manufacturers, the company is equally liable to see that in the construction no care or skill was omitted for the purpose of making the car or engine as safe as the utmost care and reasonable skill could make it. Precautions of the kind are required of the carrier to provide for the safety of passengers; but the obligation which the carrier assumes in that behalf extends beyond the specified requirements in respect to the vehicle, car, or other means of conveyance, and also includes an implied stipulation for good treatment of the passenger during the passage, trip, or voyage, and especially against ill-treatment by the carrier or his employees, and against every degree of violence on their part, or wanton interference with his person. Mistakes occur in such litigations by overlooking the fact that it is the carrier, whether corporation or natural person, that assumes these obligations, and not the driver, master, or conductor of the conveyance, for the breach of which a right of action accrues to the passenger. Breaches of the obligation assumed by the carrier for proper treatment of his passengers, it is conceded, would give a right of action to the passenger if the acts constituting the breach were committed by the carrier himself; but the argument is, that the carrier is not responsible for any wilful trespass committed by the driver, conductor, or master unless it be shown either that he authorized the act or ratified it after it was committed.

Many decided cases may be found where it is held that the master is not liable for the wilful act of his servant unless previously authorized or subsequently ratified; but none of these cases can have any proper application to the controversy before the court. M'Manus v. Crickett, 1 East, 106; Croft v. Alison, 4 Barn. & Ald. 590; Wright v. Wilcox, 19 Wend. 343. Examined carefully, it will be found that all or nearly all of those decisions may be divided into two classes, neither of which will afford much aid in the solution of the question involved in the present motion: 1. Cases where it is held that trespass will not lie against the

master for the wrongful act of his servant. 2. Controversies where it appears that the acts of the servant constituting the cause of action were not done by the servant in the course of his employment. Doubts are expressed by an able text-writer whether the court in the leading case ever intended to decide more than that the master is not liable in trespass for the wilful act of the servant, and it must be admitted that the reasons assigned for the conclusion are well put, and that they are entitled to great consideration. 1 Redf. R. R. (3d Ed.) 512. Suppose that view, however, is not correct, then it is clear that the rule laid down in that case is not applicable in actions against corporations, as it is well settled that they are responsible for acts done by their agents, "either in contractu or in delicto," if done "in the course of its business and of their employment." Philadelphia, W. & B. R. Co. v. Quigley, 21 How. [62 U. S.] 210; Moore v. Fitchburg R. Co., 4 Gray, 465; Maund v. Monmouthshire Canal Co., 4 Man. & G. 452; Philadelphia & R. R. Co. v. Derby, 14 How. [55 U. S.] 483; National Exch. Co. v. ·Drew, 2 Macq. 103; Goff v. Great N. Ry. Co., 3 El. & El. 674.

Extended remarks respecting the second class of cases is unnecessary, as it fully appears that the clerk in collecting the tickets was engaged in the business of the defendant, and was in the course of his employment. Masters are bound by the acts of their servants whenever there is an express command of the master to make a contract or do an injury, or where a servant does an injury in the immediate pursuit of his master's business, or where an injury arises to another through the negligence or want of skill of the servant. Reeve, Dom. Rel. (3d. Ed.) 356. Questions of the kind also involve to some extent the relations, obligations, and liabilities of principal and agent, as in many cases the act of the agent is the act of the principal, and it is well settled that the representations, declarations, and admissions of the agent in the course of his agency are deemed a part of the res gestæ, and are equally obligatory upon the principal as if made by himself. Principals are not in general responsible for the criminal acts or misdeeds of their agents, but they are held liable to third persons, in a civil suit, for the frauds, deceits, concealments, misrepresentations, torts, negligences, and other malfeasances or misfeasances and omissions of duty of their agents in the course of their employment, though they did not authorize the acts, nor participate in the transaction, and even if they forbade or disapproved what was done. Such, in substance, are the views of Judge Story, as expressed in his work on Agency, and the supreme court have decided that the rule of "respondeat superior" or "that the master shall be civilly responsible for the tortious acts of his servant," is of universal applica-

tion, whether the act be one of omission or commission, whether negligent or deceitful; that if it be done in the course of the employment of the servant the master is liable; and that it makes no difference that the master did not authorize or know of the act or neglect, or even if he disapproved or forbade it, he is equally liable if the act be done by the servant in the course of his employment. Story, Ag. § 452; Philadelphia & R. R. Co. v. Derby, 14 How. [55 U. S.] 486; Smith, Mast. & Serv. 152; Sleath v. Wilson, 9 Car. & P. 607; The New World v. King, 16 How. [57 U. S.] 474.

Tested by these considerations, it is quite clear that the instruction given by the court to the jury was erroneous, and that the verdict should be set aside and a new trial granted. But the court is of the opinion that the principles of law applicable in litigations growing out of the relations of principal and agent or master and servant are not the principles which fully define the rights, duties, obligations, and liabilities of the parties to this controversy. They are not strangers bearing no other relations to each other than one citizen, merely as such, bears to another; but the defendant was a carrier of passengers by water, and the plaintiff was a passenger on board the steamer of the defendant, which was engaged in carrying passengers for hire between two commercial ports. Difficulty occurred as to making change in the sale and purchase of a ticket for the trip, but the court lays that circumstance out of the case, as it is clear that the omission to purchase a ticket gave the clerk of the steamer no right whatever to inflict any personal violence on the plaintiff. Fare not having been paid by the plaintiff, the carrier, if he thought proper, might have requested him to leave the steamer, and if the request had been seasonably made and the plaintiff had refused to pay or leave, the carrier might at a proper time and place have stopped the steamer, and might have removed the plaintiff from the steamer to the shore, taking care to use no more force than was reasonably necessary for that purpose.

Nothing of the kind, however, was done or attempted, and the question as to the rights, duties, obligations, and liabilities of the parties to the suit must be determined solely in view of the facts as stated in the commencement of the opinion. Viewed in that light, as the case must be, then it appears that the clerk of the steamer demanded fare of the plaintiff, and that the plaintiff having refused to pay as requested, the clerk seized him by the collar and inflicted personal violence upon him in the manner and by the means set forth in the statement. Unjustifiable as the conduct of the clerk was, the case must be viewed as between these parties, just as it would be if no dispute had arisen as to the fare, and the questions to be decided are whether the defendant is liable for the in-

juries inflicted upon the plaintiff by the clerk, and, if so, upon what ground does that liability rest. Sufficient has already been remarked to show that the owner of the steamer is liable to the plaintiff for the injuries inflicted upon him by the agent of the owner, but it is quite important in case of a new trial to ascertain upon what ground that liability arises, whether merely as a principal answering for the acts of his agent in the course of his employment, or as a carrier of passengers answering as such, for a breach of the obligation which he assumed as such carrier, that the plaintiff as his passenger should not be ill treated by himself or his employees, and that he and they should use all due care and proper exertion to protect him as such passenger from any degree of violence or any kind of abuse or ill-treatment from other passengers, or other persons coming on board during the trip. Flint v. Norwich & N. Y. Transp. Co., 34 Conn. 554. Ship-owners, as well as the proprietors of conveyances by land, select and appoint their own agents without consulting their passengers, and it is but reasonable that they should be held responsible for any act of violence to the passenger of which such employees may be guilty, as the moment the passenger enters the steamer or other conveyance he is more or less under the control of the master or conductor, and subject to their orders. Fit or unfit, humane or brutal, good-tempered or morose, the passenger is comparatively helpless, and may be obliged to submit for the time without any means of redress. He may have his remedy against the carrier, it is said, if he can prove that the carrier was negligent, or that the active person was the agent of the carrier and was in the course of his employment, but, if not, he must be content with his remedy against the assailant of his person. Adjudged cases may be referred to which support that proposition without qualification, but they do not give full scope and effect to the obligation which the carrier assumes towards his passenger, nor to the rights and duties which those relations create and imply.

Passengers do not contract merely for ship-room and transportation from one place to another, but they also contract for good treatment and against personal rudeness and every wanton interference with their persons, either by the carrier or his agents employed in the management of the ship or other conveyance, and for the fulfilment of those obligations the carrier is responsible as principal, and the injured party in case the obligation of good treatment is broken, whether by the principal or his employees, may proceed against the carrier as the party bound to make compensation for the breach of the obligation. Chamberlain v. Chandler [Case No. 2,575]; Nieto v. Clark [Id. 10,262]; Weed v. Panama R. Co., 17 N. Y. 362; Keene v. Lizardi, 5 La. 431; Block v. Bannerman, 10 La. Ann. 3. Sickness and suffering were experienced by the wife of the plaintiff in the case of Weed v. Panama R. Co., in consequence of the failure of the train to arrive at the usual time, and the evidence showed that the detention was the wilful act of the conductor. Proof of that fact having been given, the defendants contended that they were not liable; but the court refused so to instruct the jury, and the court of appeals held that the prayer for instruction was properly refused, as the proof offered that the act of the conductor was wilful, constituted no defence to the action. High authority exists, if any be needed, in support of the proposition that the owners of a vessel are responsible for the whole conduct of the master while he is on board and in command of the vessel, unless his acts amount to a criminal offence. The Nimrod, 7 Notes Cas. 570. Civilly speaking, says Dr. Lushington, in that case the owners are responsible for any deviation of the master from that line of conduct which it behooves him to perform, not simply in the navigation of the vessel and in the care of his own seamen, but in the care of those who may be thrown on board his ship, even by an accident, as was the fact in that case. Most of the recent cases in which the principle involved in such a controversy is considered, proceed upon the ground that where the misconduct of an agent causes a breach of the obligation, or contract of the principal, then the principal is liable in an action to the injured party, whether such misconduct be wilful or malicious or merely negligent; and it would seem that it must be so, as the cause of action arises from the breach of the obligation, and if so it cannot make any difference whether the breach was occasioned by the act of the principal or of his employees. Qui facit per alium facit per se. Milwaukee & M. R. Co. v. Finney, 10 Wis. 330; Goddard v. Grand Trunk R. Co., 57 Me. 202; Pittsburgh, F. W. & C. R. Co. v. Hinds, 53 Pa. St. 515.

Conductors and employees of a railroad company represent the company in the discharge of their functions, and, being in the line of their duty in collecting the fare or taking up tickets, the corporation is liable for any abuse of their authority, whether of omission or commission; and the same rule must be applied in a suit against the owner of a steamer as the carrier of passengers for the misconduct of the master, as the owners of a vessel carrying passengers for hire are liable for breaches of duty of the master to the passengers equally as they are in case of merchandise committed to their care. 3 Kent, Comm. (Ed. 1866) 160; Baltimore & O. R. Co. v. Blocher, 27 Md. 286; Keene v. Lizardi, 5 La. 431; Sanford v. Eighth Ave. R. Co., 23 N. Y. 344. Owners are liable for the conduct of the master as master during the voyage, and for any ill-treatment of the passengers by the master in his capacity as such, a remedy may be had against the vessel herself. The Aberfoyle [Case No. 16]. Vessels

carrying passengers for hire, says Mr. Justice Nelson, stand on the same footing of responsibility as those carrying merchandise, the passage-money in the former case being the equivalent for the freight in the latter; that the vessel as well as the owner is responsible for a breach of a contract with the passenger. The Aberfoyle [Id. 17]; Pars. Shipp. 30; Dias v. The Revenge [Case No. 3,877]; Ralston v. State Rights [Id. 11,540]. Repeated decisions of the supreme court of Massachusetts are to the same effect, as will sufficiently appear by the following citations: Moore v. Fitchburg R. Corp., 4 Gray, 465; Hewett v. Swift, 3 Allen, 423. Wherever there is a contract between the master and another, the master, says Hoar, J., is responsible for the acts of the servant in executing the contract, although the act is fraudulent and one without his consent. Howe v. Newmarch, 12 Allen, 55; Seymour v. Greenwood, 7 Hurl. & N. 357; Aycrigg's Ex'rs v. New York & E. R. Co., 1 Vroom [3 N. J. Eq.] 462; Pennsylvania R. Co. v. Vandiver, 42 Pa. St. 370. Examined in any point of view, the court is of the opinion that the instruction given to the jury was erroneous, and the verdict is set aside and a new trial granted.